STATE OF NORTH CAROLINA v. PATRICK M. TRAPPER (79-CRS-38), NUN-
ZIO JAMES LOMBARDO (79-CRS-107), DENNIS LOMBARDO (79-CRS-
109), VINCENT SERGE LORUSSO (79-CRS-46), and CLARK WILLIAM
OLDENBROOK (79-CRS-48)

No. 792SC1188

(Filed 2 September 1980)

1. **Searches and Seizures § 23– marijuana odor detected during license check –
probable cause for search warrant**

    A magistrate properly issued a warrant to search a truck on the basis of
    an officer's affidavit that a strong odor of marijuana was detected while a
    driver's license check was being made since the affidavit did not show on its
    face that the driver's license check was improper.

2. **Searches and Seizures § 12– stopping of truck for investigation**

    An officer had articulable reasons for believing that a truck might
    contain marijuana and could properly stop the truck for further investiga-
    tion, and the investigation of the truck was reasonable in extent and time,
    where the officer saw suspicious activity at premises near the coast; the
    officer had been fired upon while keeping the premises under surveillance
    from the water; the officer had seen a boat aground in the area of the
    premises without a satisfactory reason for its being there; the officer saw the
    truck leave the premises at midnight; officers stopped the truck and the
    driver showed them a proper license and registration card; the officers
    inspected the truck carefully from the outside and detected the odor of
    marijuana; and the truck and driver had been detained only ten minutes
    when the odor of marijuana was detected and the driver was placed under
    arrest.

3. **Searches and Seizures § 39– warrant to search housetrailer – search of storage
shed**

    Officers did not exceed the scope of a warrant authorizing them to
    search a housetrailer when they searched a storage shed approximately 30
    feet from the housetrailer where there was a concrete walkway connecting
    the shed and the housetrailer and the shed was a part of the curtilage of the
    housetrailer.

4. **Searches and Seizures § 41– execution of warrant – knock and announce re-
quirements**

    Officers gave adequate notice of their identity and purpose before enter-
    ing a housetrailer to serve a search warrant where the officers knocked on
    the front door of the housetrailer and identified themselves as officers, the
    door was opened, and an officer read the warrant to the owner of the house-
    trailer. G.S. 15A-249; G.S. 15A-251.

5. **Criminal Law § 98.2– motion to suppress evidence – sequestration of defendants rescinded – absence of prejudice**

Defendants were not prejudiced when the trial court sequestered all defendants who intended to testify as well as the State's witnesses at a hearing on motions to suppress evidence where the court rescinded its order of sequestration and permitted all witnesses, including defendants, to return to the courtroom before the first witness at the hearing completed his direct testimony.

APPEAL by defendants from *Strickland, Judge.* Judgment entered 13 August 1979 in Superior Court, HYDE County. Heard in the Court of Appeals 25 April 1980.

The defendants were indicted for various crimes connected with the possession and sale of marijuana. Prior to trial the defendants made motions to suppress as evidence marijuana which had been confiscated after searches of a vehicle driven by the defendant Trapper and a building on property owned by the defendant Nunzio Lombardo. A hearing on the motions to suppress was held before Judge Godwin. The evidence at the hearing showed that Charlie Carrowan is a Deputy Sheriff of Hyde County. Approximately two years prior to January 1979, the defendant Nunzio Lombardo purchased a tract of land approximately one-half mile from Mr. Carrowan's home. A housetrailer was placed on the property. Mr. Carrowan had some complaints from a neighbor about noises that sounded as if they came from boat motors and trucks in the area of Mr. Lombardo's property. On one occasion Mr. Carrowan arranged to have a 60-foot boat named the "Lady Barbara" towed from Fortiscue Creek which runs in front of the Lombardo property. The operator of the boat told Mr. Carrowan that it had been driven into the creek from the Pungo River by the wind. Based on his knowledge of the wind at the time the boat had run aground, Mr. Carrowan did not believe this was true. Mr. Carrowan then began a surveillance of the Lombardo property from the water. Several shots were fired in his direction which he believed came from the Lombardo property. After that, he began a surveillance of the Lombardo property from the land side. He considered the amount of traffic abnormal but he did not observe any illegal activity.

On 13 January 1979 Mr. Carrowan received information that a truck had entered the Lombardo property. He began a

surveillance of the property at approximately 6:30 p.m. At approximately midnight, he saw clearance lights coming up the road on the Lombardo property to the highway. Mr. Carrowan followed the truck for some distance before stopping it. He testified, "As far as I could observe the driver of this truck was not breaking any motor vehicle laws." He also testified, "As to whether it was my intent to conduct a search of this truck, if I had further reason to search this truck such as if he denied me the privilege to look or anything else that he had to hide, anything that would give me any idea he had something to hide, yes, I intended to search it."

The defendant Trapper was the driver of the truck and he gave Mr. Carrowan a proper driver's license and registration card. A few minutes after the truck was stopped, Deputy Sheriff Melvin Collins and Trooper Darrell Bass of the Highway Patrol, arrived to assist Mr. Carrowan. Approximately ten minutes had elapsed after the truck was stopped when Trooper Bass walked around the truck four times. He testified he smelled the odor of marijuana emanating from the passenger side of the truck. The other two officers then went to the passenger side and smelled the odor of marijuana. The defendant Trapper was placed under arrest and Deputy Sheriff Collins went to procure a search warrant. The affidavit for the search warrant made by Deputy Sheriff Collins contained the following statement:

"The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: a strong odor or marihuana [sic] was noticed as a license check was being made on driver of said vehicle. Information was given in confidence and from a very reliable informant, also."

A search warrant was issued and a search of the truck revealed it contained several bales of marijuana.

A warrant was then procured to search the property of Nunzio Lombardo. During this search several bales of marijuana were found. Judge Godwin made findings of fact consistent with the evidence and overruled the motions to suppress. Each defendant pled guilty at a later term of court. All defendants appealed from the sentences imposed.

*Attorney General Edmisten, by Assistant Attorney General Daniel F. McLawhorn, for the State.*

*Herman E. Gaskins, Jr., Joel Hirschhorn, and Smith, Patterson, Follin, Curtis, James and Harkavy, by Michael K. Curtis, for defendant appellants.*

WEBB, Judge.

We note at the outset that our Supreme Court has recently held in *State v. Reynolds,* 298 N.C. 380, 259 S.E. 2d 843 (1979) that if a defendant intends to appeal from a ruling on a suppression motion after a plea of guilty, he must give notice of his intention to the prosecutor and the court before plea negotiations are finalized or he will lose his right of appeal. The record is not clear in this case that any notice of intention to appeal was given the prosecutor or the court. We shall consider the appeal on its merits.

The defendants contend that we should reverse and order the evidence of the marijuana suppressed. They argue that the affidavit submitted to the magistrate to search the truck did not support the issuance of a search warrant for the truck; that if the affidavit did support the issuance of the search warrant for the truck, the testimony at the hearing on the motions to suppress showed the evidence on which the affidavit was made was illegally obtained; the warrant to search the premises of Nunzio Lombardo was based on the invalid warrant to search the truck which makes it an invalid warrant; that even if the warrant to search the premises of Nunzio Lombardo was a good warrant, the officers exceeded the scope of the warrant in their search; and that the officers did not properly serve the warrant to search the premises.

[1] In order for a magistrate to issue a search warrant, he must have evidence before him from which he can find probable cause that a crime has been committed and probable cause that evidence of the crime may be on the premises to be searched. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). We hold that the affidavit in the case sub judice which contained the statement "a strong odor or marihuana [sic] was

State v. Trapper

noticed as a license check was being made on driver of said vehicle" was evidence from which a magistrate could conclude that there was probable cause that the driver of the truck was in possession of marijuana and the marijuana might be found by a search of the truck. The word "or" was clearly a typographical error. The maker of the affidavit intended to use the word "of" in the context of the sentence. The defendants, relying on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed. 2d 660 (1979) contend that the affidavit showed on its face that the evidence was illegally obtained since it stated the odor of marijuana was detected while a license check was being made. *Prouse* held that evidence of marijuana was unconstitutionally obtained when a patrolman made a random stop of a car because he "wasn't answering any complaints." There was no reason to think the driver of the vehicle was violating any law at the time he was stopped. The United States Supreme Court held this intrusion violated the driver's Fourth and Fourteenth Amendment rights. The Supreme Court recognized that some driver's license checks are constitutionally permissible giving as one example a checkpoint operation in which all cars proceeding past a certain point are stopped. When the magistrate examined the affidavit in the case sub judice, it did not show what kind of driver's license check had been made. The affidavit did not show on its face that the driver's license check was improper. The magistrate did not err in issuing the warrant for a search of the truck.

**[2]** The defendants' next contention is that the hearing before Judge Godwin showed that the evidence used to procure the search warrant for the truck was illegally obtained. They contend first that the odor of marijuana was not obtained under a plain view. *See State v. Blackwelder*, 34 N.C. App. 352, 238 S.E. 2d 190 (1977). We do not believe the plain view doctrine is dispositive of this case. The defendants also contend that Mr. Carrowan did not have a valid reason to stop the truck and if he did, the officer could not detain the truck after the driver's license and registration check had revealed nothing irregular.

The United States Supreme Court has in several cases passed on the question of detaining persons for investigation without probable cause to believe the persons have committed

crimes. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979); *Delaware v. Prouse, supra; United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed. 2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). We believe these cases hold that, consistent with the Fourth and Fourteenth Amendments, a person or vehicle may be detained for further investigation by a law enforcement officer without a warrant and without probable cause to believe a crime has been committed if the officer has a reasonable suspicion, that can be articulated, that a crime is being committed. The detention must not be unreasonable in length and the investigation must be reasonable. In the case sub judice, Mr. Carrowan was an experienced law enforcement officer; we take judicial notice of the fact that Hyde County is on the coast of North Carolina in an area which is regularly used by smugglers of marijuana; Mr. Carrowan had seen activity in the area of the Lombardo premises which made him suspicious; he had been fired upon while keeping the property under surveillance from the water; and he had seen a boat aground in the area of the premises without a satisfactory reason to him for its being there; and on 13 January 1979 at approximately 12:00 midnight, he saw a truck leave the premises of Nunzio Lombardo. We hold these are articulate reasons that could give rise to a suspicion on Mr. Carrowan's part that marijuana was being carried on the truck. He had a right to stop the truck for further investigation. We also hold the investigation was reasonable in extent and in time. The defendant Trapper was not interrogated. The officers did not open the truck body. They inspected it carefully from the outside until they detected the odor of marijuana. This took approximately ten minutes. Mr. Trapper's Fourth and Fourteenth Amendment rights were not violated. We hold that the evidence on which the warrant was issued to search the truck was not illegally gained.

The defendants' argument as to the validity of the warrant to search the Lombardo property is based on the invalidity of the warrant to search the truck. Since we have held that the warrant to search the truck was valid, we hold the search warrant for the Nunzio Lombardo premises was also valid.

[3] The defendants also contend the officers exceeded the scope of the warrant in searching the premises of Nunzio Lom-

bardo. The affidavit described the premises to be searched as follows:

> "A housetrailer, double wide, white, owned by Nunzio J. Lumbards [sic], Rt. 1, Scranton, N.C. located on North East side Fortescue [sic] Creek. That the house is approx. .2 mile off of RPR 1145 and is approx. .5 mile west of intersection of RPR 1145 & RUPR 1144. Said house is surrounded by several acres of land owned by Lumbards [sic]."

The warrant directed the officers to conduct a search of the place "described in [the] application." A search of the housetrailer did not reveal any marijuana. The officers also searched a tin shed approximately 30 feet from the housetrailer where they found several bales of marijuana. It is well settled that when a search is made pursuant to a warrant, the scope of the search is limited to the area described in the warrant. *See United States v. Davis*, 557 F. 2d 1239 (8th Cir. 1977); *Keiningham v. United States*, 287 F. 2d 126 (D.C. Cir. 1960); *Rising Sun Brewing Co. v. United States*, 55 F. 2d 827 (3d Cir. 1932). The question posed by this appeal is whether they were authorized to search a tin shed which was 30 feet away and used for storage by the occupants of the housetrailer when the warrant directed the officers to search the housetrailer. The closest case to this one which we have been able to find is *State v. Travatello*, 24 N.C. App. 511, 211 S.E. 2d 467 (1975). In that case this Court held a search of the defendant's premises did not exceed the scope of the warrant by including a search of a tool shed as well as the house itself. The case does not make it clear whether the warrant only directed a search of the house. We hold that under the warrant in the case sub judice, the officers properly searched the tin storage shed. The evidence was that it was a shed used for storage approximately 30 feet from the housetrailer. There was a concrete walkway connecting the housetrailer to the shed. Judge Godwin found the shed was a part of the curtilage and the officers did not exceed the scope of the warrant by searching the shed. We believe he was correct in this finding.

[4] The defendants next contend that the officers in serving the search warrant for the Nunzio Lombardo residence did not give adequate notice of their identity and purpose before entering the premises and therefore violated the Fourth and Four-

teenth Amendments to the United States Constitution and they also violated G.S. 15A-249 and G.S. 15A-251. State Bureau of Investigation Agent Lewis Young testified that in serving the warrant, the officers went to the front door of the house-trailer, knocked on the door and identified themselves as officers. The door was opened and Mr. Carrowan read the warrant to Nunzio Lombardo. Judge Godwin found that the warrant was executed by reading it to Nunzio Lombardo. We hold that the serving of the warrant for the search of Nunzio Lombardo's premises did not violate his constitutional rights, or his rights under Chapter 15A of the General Statutes.

[5] The defendants' last assignment of error deals with the exclusion of the defendants from the courtroom for a part of the hearing on the motions to suppress the evidence. At the start of the hearing, the defendants moved that the State's witnesses be sequestered. The court allowed this motion and then on its own motion sequestered all the defendants who intended to testify. The first witness for the State was Charlie Carrowan. While he was testifying on direct examination, the court rescinded its order of sequestration and allowed all witnesses, including the defendants, to return to the courtroom. The defendants cite textbook authority for the proposition that a party to an action who is also a witness cannot be sequestered. *See* 88 C.J.S. *Trial* § 68 (1955). We do not pass on this question in the case sub judice. The parties were allowed to return to the courtroom before the first witness had completed his testimony in chief. We hold the defendants have not shown they were prejudiced by being excluded from the courtroom for a short period of time.

No error.

Judges MARTIN (Robert M.) and HILL concur.