STATE OF NORTH CAROLINA v. MICHAEL EUGENE TRAVIS

No. 7625SC920

(Filed 1 June 1977)

1. Criminal Law § 92.1— consolidation of charges against two defendants — attorney as witness

   Defendant was not prejudiced by the consolidation for trial of identical charges against defendant and a codefendant because one of his witnesses was the attorney who appeared in the case representing the codefendant where, at the time the testimony was given, the charges against the codefendant had been dismissed on his motion for nonsuit made at the close of the State's evidence, and there was ample additional evidence of the fact to which the attorney testified.

2. Criminal Law § 43.2— photographs — accuracy

   Where there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating his testimony relative and material to some matter in controversy.

3. Criminal Law § 43.2— photographs — obscene writings

   Photographs of obscene writings on the walls and mirrors of a home were properly admitted for the purpose of illustrating an officer's testimony as to what he saw in the home where the officer testified that the photographs accurately showed the obscene writings about which he testified.

4. Criminal Law § 60.1— photographs of obscene writings — comparison with handwriting

   The trial court properly permitted a handwriting expert to use a photograph of obscene handwriting on the walls and mirrors of a home for the purpose of comparing the handwriting shown therein with known samples of defendant's handwriting and to testify that

State v. Travis

it was highly probable that defendant was the author of the hand-writing on the photographs.

**5. Criminal Law § 60.3— handwriting — expert testimony — basis for opinion**

The trial court did not err in permitting a handwriting expert who compared the writing in question with samples of defendant's handwriting to give his opinion that defendant wrote the questioned writing without giving the facts upon which his opinion was grounded, since the court has the discretion to allow an expert to give his opinion and leave the facts to be brought out on cross-examination.

**6. Criminal Law § 86.5— impeachment — conduct when a juvenile**

The trial court did not err in permitting the impeachment of defendant on cross-examination by questions eliciting evidence of bad conduct committed by defendant when he was a juvenile.

**7. Burglary and Unlawful Breakings § 7— failure to submit misdemeanor breaking and entering**

In this prosecution for felonious breaking and entering, the trial court did not err in failing to submit an issue as to defendant's guilt of misdemeanor breaking and entering where the State presented uncontradicted evidence that a home was broken into and personal property was removed therefrom and substantial evidence that defendant was guilty of this offense, and where defendant's evidence tended to show that he was not guilty of any offense.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 22 July 1976 in Superior Court, CATAWBA County. Heard in the Court of Appeals 12 April 1977.

Defendant was indicted for (1) felonious breaking and entering of the dwelling occupied by Clarence Derrick with the intent to commit the felony of larceny therein, and (2) felonious larceny after such breaking and entering. He pled not guilty.

The State's evidence showed that at some time between 22 and 25 June 1975 the Derrick residence in Newton was broken into while the family was away on vacation. A screen had been cut and a window opened on the north side of the house, a screen cut on the west side, and the basement door had been opened. Extensive damage had been done and acts of vandalism committed throughout the entire house. Obscenities had been written on walls and mirrors. Two watches, a tent, a canteen, a hunting knife, and a pocket knife were missing from the house.

An SBI handwriting expert compared samples of defendant's handwriting with photographs of the obscenities written

on the walls and mirrors, and testified that in his opinion it was highly probable that defendant wrote the obscenities. Defendant's father testified that in July 1975 defendant told him that he had broken into the house and had written obscene language on the walls and mirrors.

Defendant testified and denied he had broken into the house or that he had confessed to his father that he had done so. He offered evidence to show that his father and mother were divorced, that he lived with his mother, and that his father was extremely antagonistic to him and his mother. He also offered evidence to show that during the entire period from 22 to 25 June 1975 he was either at home, at a driver education class, or with relatives.

The jury found defendant guilty of felonious breaking and entering and not guilty of larceny. From judgment sentencing him as a committed youthful offender, defendant appealed.

*Attorney General Edmisten by Associate Attorney Sandra M. King for the State.*

*Randy D. Duncan for defendant appellant.*

PARKER, Judge.

[1] Defendant first assigns error to the court's consolidating for trial the charges against him with identical charges against one Kerry Gant. Joinder for trial of the charges against the two defendants was authorized by G.S. 15A-926 (b) (2) a. Moreover, "[o]rdinarily, unless it is shown that irreparable prejudice will result therefrom, consolidation for trial rather than multiple individual trials is appropriate when two or more persons are indicted for the same criminal offense(s)." *State v. Jones,* 280 N.C. 322, 333, 185 S.E. 2d 858, 865 (1972). Defendant contends that consolidation for trial resulted in prejudice to him in the present case because one of his witnesses was the attorney who appeared in the case representing Gant. We find no irreparable prejudice from this fact. The witness did testify for the defendant concerning the hostility which defendant's father, a witness for the State, had expressed toward defendant and his mother in a conversation prior to defendant's trial when defendant's father had tried to employ the attorney to represent him in connection with nonsupport charges then pending against him. This evidence was, of course,

material to defendant, since it tended to show the bias of one of the State's principal witnesses against him. However, defendant was in no way deprived of the benefit of this evidence by the consolidation of the cases for trial, nor do we perceive how the effect of the testimony was weakened or why the jury should have accorded it less credence because it was given by the attorney who had appeared for his co-defendant, Gant. At the time the testimony was given, the charges against Gant had already been dismissed on his motion for nonsuit made at the close of the State's evidence, and there was ample additional evidence to show the antagonism existing between defendant's father and mother. Defendant has failed to show that irreparable prejudice resulted from the consolidation of the cases for trial. In the absence of a showing that the joint trial deprived defendant of a fair trial, the exercise of the trial court's discretion in ordering the consolidation will not be disturbed upon appeal. *State v. Phifer,* 290 N.C. 203, 225 S.E. 2d 786 (1976). Defendant's first assignment of error is overruled.

[2, 3] Defendant's second assignment of error is that "[t]he court erred in allowing the State to use photographs as substantive evidence for purposes of handwriting comparison without adequate foundation assuring the accuracy of the process producing the photographs." The photographs in question, which were admitted in evidence as State's exhibits 18 and 19, clearly depict some of the obscene matter written across the surface of a mirror in one of the bedrooms in the house. Officer Gurnsey, the detective-sergeant with the Newton Police Department who investigated the break-in at the Derrick home, testified that the photographs were made under his supervision and direction and that they "fairly and accurately show the obscene writings on the wall, and the handwriting that I testified to earlier that I saw in the home of the Derricks." It has long been the rule in this State that where there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating his testimony relative and material to some matter in controversy. *State v. Tew,* 234 N.C. 612, 68 S.E. 2d 291 (1951). "Accuracy is established where, as here, it is shown by extrinsic evidence that the photograph is a true representation of the scene, object or person it purports to portray." *State v. Foster,* 284 N.C. 259, 269, 200 S.E. 2d 782, 790 (1973). The photographs were admitted over defendant's general objection, and there was no request that their use be lim-

ited or restricted. When a general objection is interposed and overruled, it will not be considered reversible error if the evidence is competent for any purpose. *State v. Walker*, 6 N.C. App. 447, 170 S.E. 2d 627 (1969) ; 1 Stansbury's N. C. Evidence (Brandis Revision), § 27. Here, the photographs were competent under long established precedent for the purpose of illustrating the testimony of Officer Gurnsey as to what he saw in the Derrick house. Therefore, the court did not err in admitting them in evidence over defendant's general objection.

[4]  In this case the photographs, State's exhibits 18 and 19, were also used in connection with the testimony of the State's witness, D. C. Matheny, an SBI agent who was qualified and held by the court to be an expert in the field of handwriting identification. Agent Matheny testified that he had received the photographs, State's exhibits 18 and 19, from Officer Gurnsey and had compared the handwriting shown therein with known samples of defendant's handwriting. After making this comparison, Agent Matheny testified that in his opinion it was "highly probable" that defendant was the author of the questioned handwriting on State's exhibits 18 and 19. In our opinion this use of the photographs by Agent Matheny is supported by the decision of our Supreme Court in *State v. Foster, supra.* In that case the Court sustained the use by a fingerprint expert of an enlarged photograph of a latent fingerprint found at the scene of a crime for comparison with a known fingerprint of the defendant, the card containing the original latent fingerprint from which the enlarged photograph was made having been lost and not being available at the trial. In the present case the only practicable way of preserving the handwriting on the walls and mirrors in the Derrick home was by means of the photographs. We hold that the use of the photographs by Agent Matheny for purposes of making the comparison was proper and that his resulting opinion testimony as an expert after making the comparison was admissible in evidence under the holding in *State v. Foster, supra.*

[5]  Defendant's third assignment of error is that "[t]he court erred in allowing the handwriting expert to give his opinion without giving the facts upon which his opinion was grounded." In this connection the record shows that the State's handwriting expert was permitted to testify that, after comparing the questioned handwriting shown on State's exhibits 18 and 19 with known handwriting samples of defendant, he had formed an

State v. Travis

opinion as to whether the writing shown on State's exhibits 18 and 19 was the handwriting of defendant. Then, over defendant's objection, the witness was permitted to testify that in his opinion it was highly probable that defendant wrote the questioned writing. In support of his third assignment of error, defendant contends it was error for the court to permit the expert to express his opinion without first testifying in greater detail as to why he arrived at it. We find no error. When the facts upon which an expert witness bases his opinion are within the expert's own knowledge, he may relate them himself and then give his opinion; or, within the discretion of the trial judge, he may give his opinion first and leave the facts to be brought out on cross-examination. *State v. Hightower,* 187 N.C. 300, 121 S.E. 616 (1924); 1 Stansbury's N. C. Evidence (Brandis Revision), § 136. The latter course was followed in this case, and defendant's third assignment of error is overruled.

**[6]** Defendant next assigns error to the court permitting, over objection, impeachment of the defendant on cross-examination by questions eliciting evidence of bad conduct. The defendant objected to the following:

"Q. Did you ever break into Mrs. John Cline's house?

A. We were charged with that.

Q. I am not asking you if you were charged with it. Did you break into it?

DUNCAN: OBJECTION

EXCEPTION No. 6

Yes, I did do that. I picked up a wristwatch at the house. I didn't do any damages there."

Defendant argues the questions were improper because the conduct inquired about related to transgressions committed by him as a juvenile. We find no error. "It is permissible for the purpose of impeachment to cross-examine a defendant in a criminal case by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct, since such questions relate to matters within the knowledge of the witness." *State v. Black,* 283 N.C. 344, 350, 196 S.E. 2d 225, 229 (1973). That the questioned conduct was committed by defendant when he was a juvenile makes no difference, as defendant by taking the stand in his own behalf was subject to

cross-examination as to specific acts of misconduct. Since defendant put his credibility in issue by testifying, the inquiries about his past acts of misconduct were relevant and properly admitted by the trial court.

**[7]** Defendant next contends that the court erred in failing to to submit to the jury an issue as to defendant's guilt or innocence of the lesser included offense of misdemeanor breaking and entering.

> "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor. . . . Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice." *State v. Hicks,* 241 N.C. 156, 159-60, 84 S.E. 2d 545, 547 (1954).

Here, uncontradicted evidence presented by the State showed that the Derrick home was broken into and articles of personal property were removed therefrom. This evidence, if believed, would show a felonious breaking and entering. The State also presented substantial evidence from which the jury could find that defendant was guilty of this offense. The defendant's evidence, on the other hand, showed he was not guilty of any offense. Thus, there was no evidence from which the jury could find that the lesser included crime of misdemeanor breaking and entering was committed, unless one surmises that the jury might accept the State's evidence in part and might reject it in part. This will not suffice. *State v. Hicks, supra.* There was no error in failing to submit an issue as to defendant's guilt or innocence of misdemeanor breaking and entering.

Defendant finally assigns error to the failure of the court to set aside the verdict or to order a new trial because of duplicate indictments. We find no error. The only apparent differences between the two indictments are corrections in the later indictment of misspellings of certain words in the larceny count in the earlier indictment. That the solicitor is not restricted to the first indictment found in a criminal case, but at any time before entering upon the trial may send another bill to the grand jury and require the defendant to answer it, is the recognized practice for the convenient and necessary administration

of the criminal law. *State v. Hastings,* 86 N.C. 596 (1882). Defendant's final assignment of error is overruled.

In our opinion defendant received a fair trial free from prejudicial error.

No error.

Judges BRITT and MARTIN concur.